UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

Eastern District of Kentucky
FILED
APR 1 2 2006
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 05-315-GWU

SHARON HUBBARD, PLAINTIFF,

VS. **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of her application for Supplemental Security Income (SSI). The appeal is currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

1

4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 C.F.R. 404.1520(e), 416.920(e).

7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to

2

support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged

3

pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Hubbard

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category

5

if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's

6

Hubbard

physical and mental impairments.  <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Sharon Hubbard, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of left shoulder spurring, possible diffuse osteoarthritis, and an affective disorder. (Tr. 18).  Nevertheless, based in part on the testimony of a vocational expert (VE), the ALJ determined that the plaintiff retained the residual functional capacity to perform a significant number of jobs existing in the economy and, therefore, was not entitled to benefits. (Tr. 21-4). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ had asked the VE whether a person of the plaintiff's age, education, and work experience could perform any jobs if she were limited to light level exertion, and also had the following non-exertional impairments. (Tr. 66). She: (1) could only occasionally climb and crawl; (2) could occasionally push, pull, or reach with the left upper extremity; and (3) was limited to simple tasks with casual, infrequent public or co-worker interaction, gradual and infrequent workplace changes, and non-confrontational supervision. (Tr. 67). The VE responded that there were jobs that such a person could perform, and proceeded to give the numbers in which they existed in the state and national economies. (Id.).

On appeal, this Court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence, and that they fairly depict

the plaintiff's condition. The plaintiff had filed a prior application for SSI and Disability Insurance Benefits (DIB) in 2001, which was denied by an ALJ in a decision dated October 8, 2002. (Tr. 77-85). The ALJ in the present case declined to reopen the prior decision, and noted that he was bound by the functional capacity determination in the prior decision absent new material evidence. Drummond v. Commissioner of Social Security, 126 F.3d 837 (6th Cir. 1997). He found that there had been no material change in the plaintiff's condition since the prior decision, and applied the same residual functional capacity. (Tr. 15, 84).

The plaintiff does not challenge the ALJ's choice of physical restrictions on appeal, and there is substantial evidence to support his findings. Objective studies such as x-rays and MRIs which were submitted were largely negative. (E.g., Tr. 265-74). A physical examination by Dr. Bobby J. Kidd in November, 2003 which found no abnormalities (Tr. 283-7) and the report of Dr. Jean-Maurice Page, who indicated that he had treated the plaintiff in 2001 and had obtained an MRI of the left shoulder which showed some spurring and would "possibly necessitate future surgical consideration as the condition worsened over the years" but could not comment on the plaintiff's current musculoskeletal status or her ability to do work-related activities also supported the ALJ's findings. State agency physicians, who reviewed the bulk of the evidence, found the same residual functional capacity as given in the hypothetical question. (Tr. 308-15, 334-8). Moreover, office notes of the plaintiff's treating physicians do not give any functional restrictions.

Hubbard

The plaintiff does argue on appeal that the mental restrictions are inadequate.

Historically, evidence submitted to the ALJ indicated that the plaintiff had several psychiatric admissions, particularly in 1993, but these were, at least in part, related to substance abuse of alcohol and prescription medication. (Tr. 168, 345, 347-8, 354, 359). There is also a possible indication of an involuntary hospital admission through the Cumberland River Comprehensive Care Center in December, 2002, but no reason is given and the facility had no records. (Tr. 172). The plaintiff's primary treating family physician during the relevant period after October 8, 2002, Dr. Robert Hoskins, made no mention of an involuntary hospitalization during this time frame (Tr. 201-6).

Dr. Hoskins had noted, however, in May, 2002 that the plaintiff, who was receiving Xanax and Lorcet, appeared to be sedated, and he planned to decrease habit forming medications. (Tr. 226-8). In June, 2003, the plaintiff was complaining of anxiety, but also appeared to be drowsy, and Dr. Hoskins noted that his nurse had thought that she sounded intoxicated on the telephone earlier. (Tr. 185,187). A toxicology screen was positive for benzodiazepines and marijuana use, but not for opioids, although Dr. Hoskins had been prescribing 110 7.5 mg hydrocodone tablets per month, along with 70 Xanax tablets. (Tr. 187). He informed the plaintiff that he would not continue to write controlled medications in the future, although he did provide Klonopin in a lower dose, which the plaintiff complained was not helpful. (Tr. 179). Her visits to Dr. Hoskins apparently ceased, although at the administrative

9

Hubbard

hearing the plaintiff described this as being due to lack of funds. (Tr. 55). She had been able to see a Dr. Delapena, who was giving her Librium. (Tr. 56). The only record from Dr. Delapena indicates that he declined to prescribe a narcotic cough medication due to her history of trouble with addictive medications and he would give only a low dose of Librium. (Tr. 366).

The plaintiff asserts that a psychological evaluation by Dr. Crystal Sahner in November, 2003 establishes greater limitations than were found by the ALJ.

Dr. Sahner was apparently not aware of the plaintiff's substance abuse history, as there is no indication that she was given access to prior records, and the plaintiff denied substance abuse. (Tr. 279-80). She described a history of anxiety and depression, and described difficulty with her memory to a motor vehicle accident in 2001 which had caused a head injury. (Tr. 279). Dr. Sahner felt that the plaintiff's attention and concentration were adequate for simple, repetitive tasks only, as concentration took "quite an effort," and she also felt that the plaintiff's insight was difficult due to memory problems and her ability to make decisions was adequate only at a "very simple level." (Tr. 280-1). Dr. Sahner's impression was of a cognitive disorder, major depressive disorder, and panic attacks with agoraphobia, and she assigned a Global Assessment of Functioning (GAF) score of 45. (Tr. 281). A GAF score in this range reflects serious impairment. Diagnostic and Statistical Manual of Mental Disorders (4th Edition-Text Revision), p. 34. In summary, Dr. Sahner stated that the plaintiff could understand instructions only for very simple, repetitive

10

tasks, had a "limited" ability to tolerate stress and pressures involved with day-to-day work activity and to interact appropriately with fellow workers and supervisors, and that her ability to sustain attention and concentration was "variable" depending on her level of pain. (Tr. 281-2).

A state agency psychologist who reviewed the record and Dr. Sahner's report, Dr. Ed Ross, completed a Mental Residual Functional Capacity Assessment indicating that the plaintiff was moderately limited in her ability to maintain attention and concentration, perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, and to interact appropriately with the general public. (Tr. 304-5). However, he also stated that he would adopt the prior ALJ's prior denial rationale from 2002. (Tr. 303, 306). Another state agency psychologist affirmed Dr. Ross's report. (Tr. 317-19).

As the plaintiff points out on appeal, the VE testified that a person with a GAF of 45 would normally be precluded from competitive work "if that score has been appropriately established." (Tr. 68). It is also at least arguable that Dr. Sahner's narrative restrictions were more limiting than the factors given in the hypothetical question. However, it appears that a significant portion of the plaintiff's mental health history, particularly her substance abuse problems, were not known to the examiner, making her conclusions somewhat suspect. In addition, her comments regarding limitations on concentration/attention were at least partly based on subjective complaints of pain, and the other evidence suggests that these complaints were not

11

Hubbard

justified by objective findings. A reasonable fact-finder could have discounted Dr. Sahner's conclusions under the circumstances. The specific limitations given by the state agency psychologists were not provided to the VE, but given that this is a <u>Drummond</u> case and that they also indicated they were adopting the mental findings from the 2002 administrative decision, there is substantial evidence to support the hypothetical factors under this particular set of facts.

The decision will be affirmed.

This the __12__ day of April, 2006.

*G. Wix Unthank*
G. WIX UNTHANK
SENIOR JUDGE

12